THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TARA C. ANDREWS, | Case No. C08-0817-JCC |
| Plaintiff, | ORDER |
| v. | |
| EQUIFAX INFORMATION SERVICES LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; and TRANSUNION LLC; | |
| Defendants. | |

This matter comes before the Court on Defendant Equifax Information Services'

Motion for Partial Summary Judgment (Dkt. No. 83), and Plaintiff's Opposition (Dkt. No. 85).

There has been no reply. Having thoroughly considered the parties' briefing and the relevant

record, the Court finds oral argument unnecessary and hereby DENIES the motion for the

reasons explained herein.[1]

_____

[1] Defendant Equifax also moved to extend the dispositive motions deadline by two weeks, to February 16, 2010. (Dkt. No. 81.) The dispositive motions deadline was originally set for February 2, 2010; Equifax had deposed a relevant party in late January and requested the extension in order to use that deposition in a motion. (*Id.* at 2.) That party's deposition was not part of the partial summary-judgment motion, which was filed one day late, on February 3. Because the requested deadline has long since passed, the Court DENIES AS MOOT the Motion to Extend (Dkt. No. 81) and DIRECTS the parties to confer and, if necessary, file a stipulation regarding additional dispositive motions, should that be necessary after this Order.

ORDER
PAGE - 1

1    **I.       BACKGROUND**

2            Plaintiff Tara C. Andrews brought claims against this country's three major credit

3    reporting agencies, alleging that they violated the Fair Credit Reporting Act ("FCRA"), 15

4    U.S.C. §§ 1681b, 1681e(b), and 1681i. The heart of Plaintiff's case rests in her assertion that

5    the credit reporting agencies, including Equifax Information Services, LLC ("Equifax"),[2]

6    mixed up her information with that of another individual, also named Tara Andrews, and

7    disseminated that information to third parties in violation of federal law. Among other things,

8    Plaintiff alleges that Equifax failed to follow reasonable procedures to ensure maximum

9    possible accuracy of the information it reported, and failed to reinvestigate her disputes. (Opp.

10   1–2 (Dkt. No. 85).) Equifax now moves to dismiss any claims arising prior to May 23, 2006;

11   the company argues that such claims were barred by the applicable statute of limitations.

12   **II.      DISCUSSION**

13           **A.       Summary Judgment**

14           Summary judgment "should be rendered if the pleadings, the discovery and disclosure

15   materials on file, and any affidavits show that there is no genuine issue as to any material fact

16   and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). In

17   determining whether an issue of fact exists, the Court must view all evidence in the light most

18   favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–50

19   (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). The moving party bears the

20   burden of showing that there is no evidence which supports an element essential to the

21   nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has

22   met this burden, the nonmoving party then must show that there is in fact a genuine issue for

23   trial. *Anderson*, 477 U.S. at 250. The nonmoving party can defeat summary judgment with

24   facts that create a genuine dispute as to any essential element of the moving party's claim. *Id*.

25   _____

26           [2] Equifax is the only Defendant that is a party to this motion.

ORDER
PAGE - 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**B.      The FCRA's Statute of Limitations**

An action to enforce any liability created by the FCPA must be brought not later than the earlier of (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs. 15 U.S.C. § 1681p. Neither Plaintiff nor Defendant argues that the five-year limitations option is at issue in this case. Rather, Defendant contends, and Plaintiff contests, that Plaintiff "discovered" the basis of the alleged violation before May 23, 2006—two years before she filed this lawsuit.

Congress amended the limitations section of the FCRA in 2003 to include the discovery provision; the amendment became effective in 2004. *See* P.L. 108-159 § 2; 15 U.S.C. § 1681p (1998; Supp. 2007); *Sweitzer v. Am. Express Centurion Bank*, 554 F. Supp. 2d 788, 794 n.2 (S.D. Ohio 2008). Before the amendment, § 1681p required that a claim be brought "within two years from the date on which the liability ar[ose]." *Deaton v. Chevy Chase Bank*, 157 F. App'x 23 (9th Cir. 2005). At least one court, in considering the 2003 amendment, has found that "the prior version is more restrictive of what conduct can form the basis for plaintiff's claims." *Tilley v. Global Payments, Inc.*, 603 F. Supp. 2d 1314, 1323 (D. Kan. 2009). Indisputably, the plain language of the statute now turns upon the date that a plaintiff acquires knowledge of the alleged violation—not the date of the alleged violation itself. *See, e.g.*, *Saindon v. Equifax Information Servs.*, 608 F. Supp. 2d 1212, 1215 (N.D. Cal. 2009) ("[I]t is not enough to say the 'violations' occurred before March 31, 2006. The statute clearly states that the clock begins to run when plaintiff 'discovers' the violations.")

The violations alleged in this matter fall under three statutory provisions: 15 U.S.C. §§ 1681b, 1681e(b), and 1681i. The first concerns permissible purposes of consumer reports, and restricts the ability of a consumer reporting agency to furnish a consumer report to a third party. The second provision concerns compliance procedures; § 1681e(b) requires a consumer reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the

ORDER
PAGE - 3

1   information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

2   Third, subsection 1681i requires a consumer reporting agency to respond to a dispute over the

3   accuracy of a report by "conduct[ing] a reasonable reinvestigation to determine whether the

4   disputed information is inaccurate . . ." 15 U.S.C. § 1681i(b).

5          Defendant provided some deposition testimony that Plaintiff called Equifax on two

6   occasions—on September 29, 2004, and October 27, 2005—to dispute information in her

7   credit file that she believed was inaccurate. (Mot. 2 (Dkt. No. 83).) Equifax claims that it sent

8   the results of its investigation into Plaintiff's disputes on three occasions, the last of which was

9   November 28, 2005. (*Id.*) Therefore, Equifax claims, "Plaintiff was on notice of potential

10  claims against Equifax as of the date she reviewed the results of the investigations and the

11  updated Equifax credit files in 2004 and 2005", because she was then aware of the information

12  in her file that she believed was inaccurate. (*Id.*)

13         There are very few cases that discuss the amended limitations period, and the parties

14  have not pointed to a single one that is binding upon this Court. No case cited by either party

15  discusses whether notice of an inaccurate credit report alone is sufficient to find that a plaintiff

16  "discovered" a violation of the FCRA.[3] However, as Plaintiff points out, inaccurate

17  information in a credit report alone is not a violation of the FCRA: the FCRA is not a strict

18  liability statute. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)

19  ("The FCRA does not impose strict liability . . . an agency can escape liability if it establishes

20  that an inaccurate report was generated despite the agency's following reasonable

21  procedures.") There are a dozen plausible reasons that a credit report may contain inaccurate

22

23         [3] The Order in *Drew v. Equifax Information Services, LLC*, 2009 WL 595459 (N.D.
24  Cal. Mar. 5, 2009), cited repeatedly by Defendant, was vacated in part on reconsideration after
     Defendant filed its motion. *Drew v. Equifax Info. Servs., LLC*, 2010 WL 1136434 (N.D. Cal.
25  Mar. 20, 2010). Both Orders indicate that the Court was in possession of a much fuller record
     of the plaintiff's course of discovery of the action. That case does not stand for the proposition
26  that knowledge of an inaccuracy alone imparts knowledge of a violation.

ORDER
PAGE - 4

1    information which would not be unlawful under the FCRA, and thus would not be a

2    "violation" within the meaning of the limitations period. The Court thus finds the conclusion

3    inescapable that there is a material dispute of fact as to when Plaintiff discovered the alleged

4    violations at issue here. *See Saindon*, 608 F. Supp. 2d at 1215 (discussing particular alleged

5    violations, and leaving for the jury to decide what constituted discovery of the violation).

6          First, Equifax does not provide sufficient evidence that would tie the reports it

7    generated to Plaintiff's discovery of the precise violations alleged in this lawsuit. For example,

8    Equifax does not explain how, from the information it sent, Plaintiff could discern whether the

9    company's procedures in ensuring accuracy or reinvestigating her dispute were reasonable,

10   indicating a violation of §§ 1681e(b) or 1681i(b). Equifax did not provide the reports

11   themselves to the Court, nor did it provide any deposition testimony that would indicate that

12   Plaintiff was aware of Equifax's procedures, nor did it enumerate whether those reports were

13   the kind of investigation contemplated by the statutes. Nor did Equifax explain how those

14   reports indicated how and when Equifax disseminated any information to third parties. 15

15   U.S.C. § 1681b.

16         More importantly, Equifax did not adequately support its assertion that Plaintiff

17   received its reports, and thereby "discovered" the alleged violations. Equifax claims that it sent

18   the results of its investigation into Plaintiff's complaints to Plaintiff's address, but it provides

19   no evidence that Plaintiff received these reports, much less deduced from them that an FCRA

20   violation might have occurred. In fact, the evidence that Equifax itself provided suggests the

21   opposite. In response to questioning as to whether Plaintiff knew whether her credit file

22   contained inaccuracies in January 2006, Ms. Andrews replied, "No. I can't say if I did or

23   didn't. I don't know if I ever saw a report that they pulled to make that decision." (Andrews

24   Dep. 110 (Dkt. No. 83 at 5).) The Court does not opine here as to the applicability of any kind

25   of mailbox rule or presumption of receipt, because Equifax failed to cite any rule, case, or

26   principle that would establish such a presumption. The Court simply finds that Equifax has not

ORDER
PAGE - 5

1    carried its burden in showing that Plaintiff discovered a violation of the FCRA before May 23,

2    2006. *Celotex*, 477 U.S. at 322.

3            Equifax also moves for summary judgment on Plaintiff's claims for damages based on

4    two occasions in early 2006 when Boeing Employee Credit Union ("BECU") denied her credit.

5    (Mot. 4 (Dkt. No. 83).) According to Equifax, "Plaintiff was made aware of Equifax's alleged

6    violations of the FCRA when she received notices that BECU denied her credit application and

7    that the denials were based on information provided by Equifax." (*Id.*) The Court finds this

8    claim to be even more divorced from the language of the statute of limitations contained in

9    §1681p. No evidence on the record indicates that the denial of credit by a third party could

10   alert Plaintiff to a violation of the FCRA. In fact, Defendant's deposition of Ms. Andrews tends

11   to prove otherwise. Plaintiff averred that she did not know what information Equifax sent to

12   BECU; she also knew that there were other legitimately reported delinquent accounts on her

13   credit report, which could have contributed to BECU's denial. (Andrews Dep. 110 (Dkt. No.

14   83 at 5).) There is simply no evidence on the record that would indicate that the denial of credit

15   was a "discovery" that Defendants had violated federal law.

16   **III.    CONCLUSION**

17           For the foregoing reasons, Defendant's Motion for Partial Summary Judgment (Dkt.

18   No. 83) is DENIED.

19           DATED this 30th day of March, 2010.

20

21

22                                                        _____

23                                                        John C. Coughenour
                                                          UNITED STATES DISTRICT JUDGE
24

25

26

ORDER
PAGE - 6